Mary Constance DAUBERT and Charles Robert Daubert, Independent Executors of the Estate of Charles A. Daubert, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. SA–76–CA–155.

United States District Court, W. D. Texas, San Antonio Division.

Nov. 3, 1981.

John R. Locke, Jr., Robert P. Thomas, III, Groce, Locke & Hebdon, San Antonio, Tex., for plaintiffs.

Edward C. Prado, U. S. Atty., by Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., William W. Guild, Atty. in Charge, Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SESSIONS, Chief Judge.

On October 27, 1981, trial was had before the Court in the above-styled and numbered cause. After considering the evidence and arguments of counsel, the Court now enters its Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. Plaintiffs, Mary Constance Daubert and Charles Robert Daubert, duly appointed and qualified independent executors of the Estate of Charles A. Daubert, Deceased, seek a refund of $11,572.56 of taxes on the Estate of Charles A. Daubert, Deceased, plus interest in the amount of $2,109.70, which they allege to have been overpaid to the Internal Revenue Service.

2. The issue in this case is whether the Decedent, Charles A. Daubert, transferred to his wife his community one-half property interest in a life insurance policy on his life, making the policy the separate property of his wife and thereby precluding the inclusion of one-half of the proceeds of the policy in his taxable estate pursuant to 26 U.S.C. § 2042(2) (1976).

3. Charles A. Daubert, Decedent, died on March 25, 1972. Plaintiffs, Mary Constance Daubert (Decedent's wife), and Charles Robert Daubert (Decedent's son) were duly appointed and qualified as Independent Executors of the Estate of Charles A. Daubert, Deceased, on April 24, 1972.

4. On December 12, 1972, Plaintiffs filed with the Internal Revenue Service an Estate Tax Return (Form 706) for the Estate of Charles A. Daubert, Deceased, showing a federal estate tax due in the amount of $46,236.47. They paid that amount of tax on December 12, 1972.

5. The Internal Revenue Service audited the Estate Tax Return and, having determined a deficiency, assessed on November 5, 1975, additional federal estate taxes in the amount of $11,572.56, plus interest in the amount of $2,109.70. Plaintiffs paid the $13,682.26 assessment on November 18, 1975.

6. The assessment of additional estate taxes was based upon a determination by the IRS that an insurance policy on the life of the Decedent, Charles A. Daubert, in the face amount of $75,000.00, Policy No. 3079841, issued in 1958 by the Massachusetts Mutual Life Insurance Company, was the community property of the Decedent and his wife. Therefore, one-half of the proceeds from the policy were includable in the gross estate of the Decedent for purposes of federal estate taxation pursuant to 26 U.S.C. § 2042(2).

7. Constance Krause Daubert, who is one and the same person as the Plaintiff, Mary Constance Daubert, signed the application for the insurance policy as the "Purchaser." The Decedent, Charles A. Daubert, signed the application as the "Proposed Insured." The application was signed October 31, 1958, and was filed with the Massachusetts Mutual Life Insurance Company on or about November 5, 1958. (Exhibit P–1).

8. The application was filled in by Edward Hall, the agent who sold the policy to the Dauberts. Item 9 of the application designated Decedent's wife, Mary Constance Daubert, as the beneficiary, if living, otherwise to the Estate of Mary Constance Daubert. Item 10 of the application, enti-

tled "Owner", provided one box labeled "Proposed Insured" for designating the proposed insured as the owner, and a second box with a blank space and the following parenthetical instruction: "If other than Proposed Insured, print full name and relation to Proposed Insured." The owner was designated as Mary Constance Daubert[1], wife of the Insured, or her legal representatives. Item 10 further stated, below the blank space, "the right to change and successively change to any beneficiary, during the lifetime of the insured, subject to the consent of the Company, is reserved to the owner." The application further provided, directly above the signature of Mary Constance Daubert as "Purchaser" the following language:

*Agreement of Purchaser if Other Than Proposed Insured.*

This application is made at the instance and request of the undersigned Purchaser and the Purchaser agrees to be bound by the representations, declarations, statements, answers and agreements contained in Parts 1 and 2 of this application and any amendments of and supplements to this application.

(Exhibit P–1).

9. Pursuant to the application, the Massachusetts Mutual Life Insurance Company issued a life insurance policy in the face amount of $75,000.00, Policy No. 3079841, on the life of the Decedent, Charles A. Daubert.

10. The policy, effective August 25, 1958, designated Charles A. Daubert as the Insured. The policy designated as the Owner Mary Constance Daubert, or her legal representatives. The policy designated as the beneficiary Mary Constance Daubert, "the Insured's wife, if living at the death of the Insured; otherwise the executors or administrators of the said" Mary Constance Daubert. (Exhibit P–2).

11. The ownership designation of the policy, as supplied to the insurance company on the application, did not change from the date of its issuance until the date of the death of the Insured.

12. All premiums on the life insurance policy were paid out of community funds. (Exhibit D–A, Answers of the Plaintiffs, Interrogatory No. 2).

13. Although Mary Constance Daubert executed the application on the signature line designated Purchaser, the Decedent selected the options and elections, including an automatic premium loan provision (Exhibit P–1, Item 15), and the accumulation of dividends on the policy with a term insurance option (Exhibit P–1, Item 14). These elections produced in each year of the policy's life a policy loan that was substantially equal to the cash surrender value of the policy. One-year term insurance was purchased each year in an amount approximately equal to the amount of the policy loan. This utilization of the dividends from the policy required annual payments well below the stated premium of $4,150.50 per year and allowed a substantial portion of the net cash premium actually paid to the insurance company each year to become interest on the policy loan outstanding. The management of the policy through the above-described elections and through dividend payment options presented by the company at the beginning of each calendar year minimized the actual amount of cash premium paid each year and converted into a deductible interest expense a substantial amount of the cash paid.

14. All correspondence relating to the policy was directed to the business address of Charles A. Daubert at 542 Milam Building, San Antonio, Texas. All elections and all dividend payments were at the direction of the Decedent, even though the policy designated Mary Constance Daubert as the Owner. Until his death, the Decedent performed the actual management of the policy. (Exhibit D–B).

15. Although the application and the policy denominated Mary Constance Dau-

---

1. Although both the policy and the application referred to Plaintiff as Constance Krause Daubert, the Findings of Fact and Conclusions of Law uniformly refer to her by her present legal name, Mary Constance Daubert.

bert as the Owner of the policy and although the Decedent purchased the policy simultaneously with a second policy naming his wife as the insured and himself as the Owner for the purpose of providing available cash upon the death of either spouse, the Decedent took no affirmative action during his lifetime showing his intent to make an irrevocable inter vivos gift of his community interest in the policy to his wife, or of his intent to make the policy the separate property of his wife. Rather, the policy was maintained at community expense, and was managed by the Decedent for the benefit of the community.

16. The Decedent, Charles A. Daubert, did not transfer to his wife his community one-half interest in the life insurance policy on his life, and the policy was not the separate property of his wife.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this cause pursuant to 28 U.S.C. § 1346(a)(1).

■ 2. Under Texas law, there is a strong presumption that property purchased with community funds is community property. *Freedman v. United States*, 382 F.2d 742 (5th Cir. 1967); *Davis v. Prudential Insurance Company of America*, 331 F.2d 346 (5th Cir. 1964); *Commissioner v. Fleming*, 155 F.2d 204 (5th Cir. 1946); *Brown v. Lee*, 371 S.W.2d 694 (Tex.1963). *See also Magee v. Young*, 145 Tex. 485, 198 S.W.2d 883 (1946); *Brick & Tile, Inc. v. Parker*, 143 Tex. 383, 186 S.W.2d 66 (1945).

■ 3. Under Texas law, if a husband conveys real estate to his wife naming his wife as owner of the real property, it is presumed that the husband made a gift of the property to his wife, making the property her separate property. *Prichard v. United States*, 397 F.2d 60, 63 (5th Cir. 1968); *McAdams v. Ogletree*, 348 S.W.2d 75 (Tex. Civ.App.1961); *Reed v. Reed*, 283 S.W.2d 311 (Tex.Civ.App.1955). Plaintiffs concede that the presumption for real estate is not applicable to personal property.

■ 4. Absent a showing that one spouse intended to transfer his community property interest to the other spouse, making a gift of his community interest in that property to the other spouse as her separate property, the Court will not presume a gift or transfer of the community property interest. *Freedman v. United States*, 382 F.2d 742 (5th Cir. 1967). *See Patterson v. Metzing*, 424 S.W.2d 225 (Tex.Civ.App. 1967).

■ 5. In order to transfer a community one-half interest in proceeds from a life insurance policy, the purported donor must "perform an affirmative act which would clearly reflect an intention to make a gift of [the] community share." *Freedman v. United States*, 382 F.2d at 747. Absent evidence of an "affirmative act" clearly reflecting that the purported donor intended to make a gift of his community property interest to his wife as her separate property, the Court cannot presume that the purported donor made a gift of his interest to his wife. *Id.*

■ 6. Although a decedent spouse can effectively make a gift of or transfer his community interest in life insurance policy proceeds by executing an instrument by which he makes a conscious and objectively manifested choice to affirmatively assign ownership of an insurance policy to his spouse, *Bintliff v. United States*, 462 F.2d 403 (5th Cir. 1972); *Parson v. United States*, 460 F.2d 228 (5th Cir. 1972), the policy application executed by the Decedent, Charles A. Daubert, did not put him to such a clear and conscious choice as to constitute an "affirmative act" reflecting donative intent. *Freedman v. United States, supra.*

7. The Decedent, Charles A. Daubert, by designating his wife to be the owner of the insurance policy in question, did not transfer or make a gift to her of his community one-half interest therein.

8. The proceeds of the $75,000.00 life insurance policy issued by Massachusetts Mutual Life Insurance Company on the life of Charles A. Daubert are not the separate property of Mary Constance Daubert, and accordingly, his community one-half inter-

est in the proceeds are includable in the Decedent's taxable estate pursuant to 26 U.S.C. § 2042(2).

Any finding of fact is deemed to be a conclusion of law, and any conclusion of law is deemed to be a finding of fact as is appropriate.

MEMORANDUM OPINION AND ORDER

This case, which came on for trial before the Court on October 27, 1981, involves a claim by the Estate of Charles A. Daubert for a refund of overpayment of federal estate taxes. The Court has entered this date its Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure, and now enters this Memorandum Opinion and Order.

The sole issue presented by this case is whether one-half of the proceeds from a $75,000.00 life insurance policy on the life of the Decedent, Charles A. Daubert, are includable in his taxable estate pursuant to 26 U.S.C. § 2042(2) (1976). Plaintiffs, executors of the estate of the Deceased, contend that the Decedent made a gift to his wife of his community one-half interest in the proceeds of the policy at the time the policy was purchased. Plaintiffs argue that the Decedent transferred his community interest in the policy proceeds by designating his wife as the owner of the policy in the appropriate blank on the application form. The Decedent's wife, Mary Constance Daubert, signed the application for the policy as "Purchaser."

The Government contends that under Texas community property law, property acquired with community funds is presumed to be community property. The designation of his wife as owner and purchaser of the policy on Decedent's life was not a sufficient affirmative act indicating the decedent's intent to transfer his community property interest to his wife as her separate property. Accordingly, Decedent's community one-half interest in the policy proceeds is includable in his taxable estate pursuant to § 2042(2).

The parties have argued this case primarily upon the authority of *Freedman v. Unit-ed States*, 382 F.2d 742 (5th Cir. 1967). In *Freedman*, the Court held under circumstances analogous to those in this case, that under Texas law a wife did not transfer her community property interest in an insurance policy on her life by naming her husband as the owner and primary beneficiary of the policy. The Court held that although the husband signed the application for the policy as "owner," "the decedent did not perform an affirmative act which would clearly reflect an intention to make a gift of her community share." 382 F.2d at 747. The Court reasoned that under applicable Texas law it could not infer the decedent's donative intent to transfer her community interest in the policy solely on the basis of her designation of her spouse as owner and her subsequent noninterference with the policy. *Id.* at 747 n.9.

Plaintiffs conceded at closing argument that the Decedent Charles A. Daubert did not perform a separate affirmative act as required by *Freedman*. Rather, Plaintiffs argued that the Court should infer the Decedent's donative intent from the evidence that the policy was purchased in accordance with the customary practice and common understanding of insurance companies that signing over ownership would be sufficient to transfer community interest. In this regard, Plaintiffs argue that the Decedent purchased two policies, one owned by himself insuring the life of his wife, and the other owned by his wife insuring his own life, for the purpose of making available non-probate cash upon the death of either spouse.

The Court is unable to accept this argument for several reasons. First, as the Government pointed out in its closing argument, it can be assumed in every case similar to this one that the decedent intended to reduce the size of his taxable estate and to maximize liquidity. Under Plaintiffs' argument, the Court would automatically resolve any ambiguity against the inclusion of insurance policy proceeds in a taxable estate. However, Texas law does not permit the Court to lightly infer that decedent transferred his community property inter-

est to his wife as her separate property. While the Texas law presumption of community property is rebuttable, rebuttal requires "clear evidence that the donor intended to effect a complete transfer of title . . . ." *Freedman v. United States*, 382 F.2d at 747 n.9 (citing *Johnson v. First National Bank*, 306 S.W.2d 927 (Tex.Civ. App. Fort Worth 1957, no writ)). *See Parson v. United States*, 460 F.2d 228, 232 (5th Cir. 1972).

Second, the evidence at trial indicated that the Decedent retained control over the policy and its management throughout his life, despite the indication on the application and policy that Mary Constance Daubert was its owner. The Decedent selected all options and elections governing the policy when it was purchased, and made all subsequent decisions with regard to payment of premiums and investment of dividends on the policy. (See Exhibit D–B). Because the Decedent retained control of the policy and its management during his lifetime, the Court cannot conclude that he actually made a gift of the policy to his wife as her separate property. Under the circumstances of this case, the Court is bound to give effect to substance over form. *Prichard v. United States*, 397 F.2d 60, 63–64 (5th Cir. 1968).

While this result might appear to frustrate the purported intent of Decedent to provide available cash to his wife upon his death, his intent to provide non-probate liquidity does not translate into an intent to make his interest in the policy his wife's separate property during his lifetime. In order to transfer his community interest in the policy, the Decedent was required by Texas law to undertake an affirmative act in transferring his interest, clearly demonstrating his intent to make a gift of the property. His minimal act of filling in his wife's name as the owner in Item 10 on the application for the policy is not sufficient evidence of his donative intent. Moreover, the probity of his designating his wife as owner to the issue of his intent is substantially diminished by his subsequent handling and management of the policy during his lifetime.

Third, for the reasons stated above, the facts of this case do not fall within *Bintliff v. United States*, 462 F.2d 403 (5th Cir. 1972), and *Parson v. United States*, 460 F.2d 228 (5th Cir. 1972). The application form executed by Decedent and his wife did not put Decedent to a clear and conscious choice between assigning his entire community interest to his wife or retaining that interest, as did the policies and applications in *Bintliff* and *Parson*. Indeed, the Decedent's subsequent handling of the policy belies his intent to completely transfer his interest in the policy.

Accordingly, for the reasons set forth above, the Court concludes that the Decedent did not transfer to his wife his community one-half interest in the proceeds of the insurance policy on his life. His community interest in the proceeds, therefore, must be included in Decedent's taxable estate pursuant to 26 U.S.C. § 2042(2).